OPINION OF THE COURT
Simons, J.
The issue on this appeal is whether an infant model may disaffirm a prior unrestricted consent executed on her behalf by her parent and maintain an action pursuant to section 51 of the Civil Rights Law against her photographer for republication of photographs of her. We hold that she may not.
Plaintiff is now a well-known actress. For many years prior to these events she had been a child model and in 1975, when she was 10 years of age, she obtained several modeling jobs with defendant through her agent, the Ford Model Agency. One of the jobs, a series of photographs to be financed by Playboy Press, required plaintiff to pose nude *342 in a bathtub. It was intended that these photos would be used in a publication entitled “Portfolio 8” (later renamed “Sugar and Spice”). Before the photographic sessions, plaintiff’s mother and legal guardian, Teri Shields, executed two consents in favor of defendant.* After the pictures were taken, they were used not only in “Sugar and Spice” but also, to the knowledge of plaintiff and her mother, in other publications and in a display of larger-than-life photo enlargements in the windows of a store on Fifth Avenue in New York City. Indeed, plaintiff subsequently used the photos in a book that she published about herself and to do so her mother obtained an authorization from defendant to use them. Over the years defendant has also photographed plaintiff for Penthouse Magazine, New York Magazine and for advertising by the Courtauldts and Avon companies.
In 1980 plaintiff learned that several of the 1975 photographs had appeared in a French magazine called “Photo” and, disturbed by that publication and by information that defendant intended others, she attempted to buy the negatives. In 1981, she commenced this action in tort and contract seeking compensatory and punitive damages and an injunction permanently enjoining defendant from any further use of the photographs. Special Term granted plaintiff a preliminary injunction. Although it determined that as a general proposition consents given by a parent pursuant to section 51 barred the infant’s action, it found that plaintiff’s claim that the consents were invalid or restricted the use of the photographs by Playboy Press presented questions of fact. After a nonjury trial the court *343 ruled that the consents were unrestricted as to time and use and it therefore dismissed plaintiff’s complaint. In doing so, however, it granted plaintiff limited relief. On defendant’s stipulation it permanently enjoined defendant from using the photographs in “pornographic magazines or publications whose appeal is of a predominantly prurient nature” and it charged him with the duty of policing their use. The Appellate Division, by a divided court, modified the judgment on the law and granted plaintiff a permanent injunction enjoining defendant from using the pictures for purposes of advertising or trade. Two Justices voted for the result believing that plaintiff possessed a common-law right to disaffirm the consent given defendant by her parent. Justice Kupferman concurred, believing that in addition to the common-law right, the consents were governed by section 3-105 of the General Obligations Law and therefore could be interpreted to have expired after three years. Justice Asch also concurred in the result but on other grounds. He construed the transaction as a sale of pictures, not services, and applying the Uniform Commercial Code, he interpreted the consents and found them void because they were “unconscionable” (see Uniform Commercial Code, §§ 2-102,2-302). Plaintiff had not raised that issue before the trial court, however, nor did the parties present evidence on it and we have not considered it (see Uniform Commercial Code, § 2-302, subd [2]). Justice Carro dissented and voted to affirm the judgment of Trial Term. It was his view that the consents given in conformity with the statute constituted general releases and provided a complete defense to plaintiff’s subsequent action.
The parties have filed cross appeals. Defendant requests reinstatement of the trial court’s judgment. Plaintiff requests, in the alternative, that the order of the Appellate Division be modified by striking the limitation enjoining use only for purposes of advertising and trade, or that the order of the Appellate Division should be affirmed or, failing both of these, that a new trial be granted. Since the Appellate Division accepted the trial court’s findings that the consents were valid and unrestricted as to time and use, we are presented with only a narrow issue of law *344 concerning the legal effect to be given to the parent’s consents.
Historically, New York common law did not recognize a cause of action for invasion of privacy (Arrington v New York Times Co., 55 NY2d 433; Roberson v Rochester Folding Box Co., 171 NY 538). In 1909, however, responding to the Roberson decision, the Legislature enacted sections 50 and 51 of the Civil Rights Law; Section 50 is penal and makes it a misdemeanor to use a living person’s name, portrait or picture for advertising purposes without prior “written consent”. Section 51 is remedial and creates a related civil cause of action on behalf of the injured party permitting relief by injunction or damages (see Arrington v New York Times Co., supra, at p 439; Flores v Mosler Safe Co., 7 NY2d 276, 280). Section 51 of the statute states that the prior “written consent” which will bar the civil action is to be as “above provided”, referring to section 50, and section 50, in turn, provides that: “A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor” (emphasis added).
Thus, whereas in Roberson, the infant plaintiff had no cause of action against the advertiser under the common law for using her pictures, the new statute gives a cause of action to those similarly situated unless they have executed a consent or release in writing to the advertiser before use of the photographs. The statute acts to restrict an advertiser’s prior unrestrained common-law right to use another’s photograph until written consent is obtained. Once written consent is obtained, however, the photograph may be published as permitted by its terms (see Welch v Mr. Christmas, 57 NY2d 143).
Concededly, at common law an infant could disaffirm his written consent (see Joseph v Schatzkin, 259 NY 241; Casey v Rastel, 237 NY 305) or, for that matter, a consent executed by another on his or her behalf (see Lee v Silver, 262 App Div 149, affd 287 NY 575; Goldfinger v Doherty, 153 Misc 826, affd 244 App Div 779; Aborn v Janis, 62 Misc 95, affd 122 App Div 893). Notwithstanding these rules, it *345 is clear that the Legislature may abrogate an infant’s common-law right to disaffirm (see, e.g., General Obligations Law, § 3-101, subd 3; § 3-102, subd 1; § 3-103; Education Law, § 281; Insurance Law, § 145) or, conversely, it may confer upon infants the right to make binding contracts (see Matter of T.W.C., 38 NY2d 128, 130 [Domestic Relations Law, § 115-b]; Hamm v Prudential Ins. Co. of Amer., 137 App Div 504 [Insurance Law, § 145, formerly §55]; Matter of Presler, 171 Misc 559). Where a statute expressly permits a certain class of agreements to be made by infants, that settles the question and makes the agreement valid and enforceable. That is precisely what happened here. The Legislature, by adopting section 51, created a new cause of action and it provided in the statute itself the method for obtaining an infant’s consent to avoid liability. Construing the statute strictly, as we must since it is in derogation of the common law (see McKinney’s Cons Laws of NY, Book 1, Statutes, § 301, subd b), the parent’s consent is binding on the infant and no words prohibiting disaffirmance are necessary to effectuate the legislative intent. Inasmuch as the consents in this case complied with the statutory requirements, they were valid and may not be disaffirmed (see Matter of T.W.C., supra).
Nor do we believe that the consents may be considered void because the parties failed to comply with the provisions of section 3-105 of the General Obligations Law requiring prior court approval of infants’ contracts. By its terms, section 3-105 applies only to performing artists, such as actors, musicians, dancers and professional athletes moreover, it is apparent by comparing other statutes with it that the Legislature knowingly has differentiated between child performers and child models. Thus, section 3229 (formerly § 3216-c) of the Education Law, which applies to “Child performers”, is referred to in section 3-105 (subd 2, par a) of the General Obligations Law but section 3230 of the Education Law, which applies to child models, is not. Child models are also recognized as a separate work classification in section 172 (subd 2, par f) of the Labor Law. Furthermore, section 3-105 was not designed to expand the rights of infants to disaffirm their contracts, as the concurring Justice at the Appellate Divi *346 sion would apply it, but to provide assurance to those required to deal with infants that the infants would not later disaffirm executory contracts to the adult contracting party’s disadvantage (see Matter of Prinze [Jonas], 38 NY2d 570, 575). Sections 50 and 51 as we interpret them serve the same purpose, to bring certainty to an important industry which necessarily uses minors for its work. This same need for certainty was the impetus behind not only section 3-105 but the various other sections of the General Obligations Law which prohibit disaffirmance of an infant’s contract.
Realistically, the procedures of prior court approval set forth in section 3-105, while entirely appropriate and necessary for performing artists and professional athletes, are impractical for a child model who, whether employed regularly or sporadically, works from session to session, sometimes for many different photographers. Moreover, they work for fees which are relatively modest when compared to those received" by actors or professional athletes who may be employed by one employer at considerably greater remuneration for a statutorily permissible three-year term. Indeed, the fee in this case was $450, hardly sufficient to warrant the elaborate court proceedings required by section 3-105 or to necessitate a court’s determination of what part should be set aside and preserved for the infant’s future needs. Nor do we think court approval necessary under the circumstances existing in the normal child model’s career. Given the nature of the employment, it is entirely reasonable for the Legislature to substitute the parents’ judgment and approval of what is best for their child for that of a court.
It should be noted that plaintiff did not contend that the photographs were obscene or pornographic. Her only complaint was that she was embarrassed because “they [the photographs] are not me now.” The trial court specifically found that the photographs were not pornographic and it enjoined use of them in pornographic publications. Thus, there is no need to discuss the unenforceability of certain contracts which violate public policy (see, e.g., Penal Law, § 235.00 et seq.) or to equate an infant’s common-law right *347 to disaffirm with that principle, as the dissent apparently does.
Finally, it is claimed that the application of the statute as we interpret it may result in unanticipated and untoward consequences. If that be so, there is an obvious remedy. A parent who wishes to limit the publicity and exposure of her child need only limit the use authorized in the consent, for a defendant’s immunity from a claim for invasion of privacy is no broader than the consent executed to him (see Welch v Mr. Christmas, 57 NY2d 143, supra; Adrian v Unterman, 281 App Div 81, affd 306 NY 771).
The order of the Appellate Division should be modified by striking the further injunction against use of the photographs for uses of advertising and trade, and as so modified, the order should be affirmed.

 The consents provided in pertinent part:
“I hereby give the photographer, his legal representatives, and assigns, those for whom the photographer is acting, and those acting with his permission, or his employees, the right and permission to copyright and/or use, reuse and/or publish, and republish photographic pictures or portraits of me, or in which I may be distorted in character, or form, in conjunction with my own or a fictitious name, on reproductions thereof in color, or black and white made through any media by the photographer at his studio or elsewhere, for any purpose whatsoever; including the use of any printed matter in conjunction therewith.
“I hereby waive any right to inspect or approve the finished photograph or advertising copy or printed matter that may be used in conjunction therewith or to the eventual use that it might be applied.”