**In the Matter of the ESTATE OF Rhea W. HENDREN, Deceased.**

**Don CONNELL and Candace L. Emig, Co-Executors, Respondents-Appellants,**

v.

**A.B. b/n/f Faye Land, Petitioner-Appellee.**

**No. 3–783A238.**

Court of Appeals of Indiana, Third District.

Feb. 14, 1984.

Rehearing Denied May 7, 1984.

William H. Tobin, Saul I. Ruman & Associates, Hammond, for respondents-appellants.

James A. Harris, Sachs & Hess, P.C., Hammond, for petitioner-appellee.

GARRARD, Judge.

This is an appeal from the award of a family allowance under the probate code, IC 29–1–4–1.[1]

On November 5, 1981 Faye Land initiated a paternity action in the juvenile division of the Lake Superior Court. The putative father of Land's as yet unborn child was Rhea W. Hendren, a fifty-five year old widowed truck driver for Inland Steel Company. Land sought a declaration of paternity and an award of support. On December 21, 1981 she amended her petition indicating she had given birth to a son, A.B., on December 11, 1981.

Blood tests performed by agreement of the parties indicated a probability of 96.13% that Hendren was A.B.'s biological father. After some discussion the parties reached an agreement, and an order embodying that agreement was prepared. On September 10, 1982 the order was submitted to the juvenile court referee for his approval. The order provided, among other things, that Hendren was the father of Land's child and that Hendren would provide support for the child.

On October 1, 1982 Hendren's counsel received the proposed order back from the juvenile court referee marked "denied." The referee advised Land's counsel he had denied the order because he felt only the court could approve a provision in the order providing for a reduction in support payments upon Hendren's succession to his Social Security benefits. The attorneys for the parties inserted a remedial provision and resubmitted the order on October 6, 1982. It was returned approved as of October 7, 1982.

1. IC 29–1–4–1 provides:
   "The surviving spouse of a decedent who was domiciled in Indiana at his death is entitled from the estate to an allowance of eight thousand five hundred dollars ($8,500) in personal property. If there is no surviving spouse, the decedent's children who are under eighteen (18) years of age at the time of the decedent's death are entitled to the same allowance to be divided equally among them. If there is less than eight thousand five hundred dollars ($8,500) in personal property in the estate, the spouse or decedent's children who are under eighteen (18) years of age at the time of the decedent's death, as the case may be, are entitled to any real estate of the estate to the extent necessary to make up the difference between the value of the personal property and eight thousand five hundred dollars ($8,500). The amount of that difference is a lien on the real estate. An allowance under this section is not chargeable against the distributive shares of either the surviving spouse or the children."

However, unknown to counsel for both parties, Hendren had died of cancer on October 4, 1982. Hendren's will was filed for probate on October 8, 1982, and letters testamentary were issued. On November 19, 1982 Land filed a petition requesting a family allowance be awarded to her son. The parties agreed to a stipulation of facts and submitted the legal issue of A.B.'s right to such an allowance to the court. On March 15, 1983 the court granted the allowance in the following ruling:

"The Court having had the matter of the Petitioner [sic] for Statutory Allowance of [A.B.], a minor, under advisement, and having heard the evidence and examined the briefs filed herein, now approves the petition and orders that the minor's allowance authorized pursuant to I.C. 29–1–4–1 be paid from the personal property of this Estate, and if there are insufficient personal property assets to pay the same, the difference therein shall be made up from the real estate in this Estate, and shall be a lien thereon."

The executors of Hendren's estate appeal this ruling raising one issue:

Was it error to grant A.B. an IC 29–1–4–1 allowance when there had been no judicial declaration of paternity during Rhea Hendren's lifetime as required by IC 29–1–2–7(b)? That statute provides in pertinent part:

"(b) For the purpose of inheritance to, through and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his father, if but only if, (1) the paternity of such child has been established by law, during the father's lifetime; or (2) if the putative father marries the mother of the child and acknowledges the child to be his own.

\* \* \* \* \* \*

Such child shall also be treated the same as if he were a legitimate child of his father for the purpose of determining homestead rights, and the making of family allowances."

The executors maintain that filiation by the procedures prescribed in IC 29–1–2–7(b) is an absolute prerequisite for an award under IC 29–1–4–1. IC 29–1–2–7(b) provides an illegitimate child will be treated as a legitimate child for intestate inheritance and the award of family allowance if: (1) the child's paternity is established by law during the father's lifetime; or (2) the putative father marries the mother and acknowledges the child as his own.[2] The executors acknowledge that filiation via the former procedure was in process at Hendren's death. However, they argue that because the order recognizing Hendren's paternity was not approved until three days after Hendren's death, A.B.'s paternity was not established by law during Hendren's lifetime. The executors contend this failure prohibits A.B.'s receiving an IC 29–1–4–1 allowance as a "child" of the deceased Hendren.

The executors ask us to determine whether an IC 29–1–4–1 allowance can be awarded to an illegitimate in the absence of a legal determination of paternity during the father's lifetime. Logically, this issue can arise in either of two situations: (1) The paternity determination was not initiated during the putative's father's lifetime; or (2) The paternity determination was not completed during the putative father's lifetime. The present case is an instance of the second situation. Before we can determine what, if any, legal significance that fact has, we must review the law in this area. We begin with case law, and the

---

**2.** We note IC 29–1–2–7 has been described as a statute of succession, rather than a statute of legitimation. A. . B. . v. C. . D. . (1971), 150 Ind.App. 535, 277 N.E.2d 599, 604. Statutes of legitimation permit a full declaration of legitimacy for all purposes, while statutes of succession simply allow a child to inherit as if legitimate although remaining "illegitimate in social status." 277 N.E.2d at 604. From 1831 until 1954 there was an Indiana statute of legitimation. However, the 1953 revision of the probate code eliminated the legitimation statute and replaced it with what is now Section 2501. The juvenile code also contains a section on paternity. IC 31–6–6.1–1 to 31–6–6.1–19. It provides for a determination of paternity as the necessary precursor to orders concerning support, visitation and custody. IC 31–6–6.1–10(a).

Supreme Court's views on the rights of illegitimates.

The rights of illegitimate children is an issue which the Supreme Court has addressed with some frequency. *Pickett v. Brown* (1983), —— U.S. ——, 103 S.Ct. 2199, 76 L.Ed.2d 372; *Mills v. Habluetzel* (1982), 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770; *Lalli v. Lalli* (1978), 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503; *Trimble v. Gordon* (1977), 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31; *Gomez v. Perez* (1973), 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56; *Levy v. Louisiana* (1968), 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436. In *Gomez v. Perez, supra,* the Court held that a state may not make "illogical and unjust" distinctions between the rights of legitimate and illegitimate children. *Gomez v. Perez* (1973), 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56, quoting *Weber v. Aetna Casualty & Surety Co.* (1972), 406 U.S. 164, 175, 92 S.Ct. 1400, 1406, 31 L.Ed.2d 768. However, the Court also recognized the existence of certain practical problems regarding the rights of illegitimates:

> "We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination."

409 U.S. at 538, 93 S.Ct. at 875. Although the Court has never been called upon to address the precise issue confronting us, in *Lalli v. Lalli* (1978), 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 it was confronted with an equal protection challenge to a similar statute. Although the Court's equal protection analysis is not relevant here, its discussion of the reasons for requiring a determination of paternity during the reputed father's lifetime is instructive.

In *Lalli,* Robert Lalli claimed to be the illegitimate son of Mario Lalli and entitled to inherit from his estate. A New York statute allowed illegitimates to inherit provided that they had obtained a court order declaring paternity during the father's life-

time. Robert Lalli had not obtained such an order prior to Mario Lalli's death. He challenged the New York statute as illegally discriminating against illegitimates in violation of the Equal Protection Clause of the Fourteenth Amendment. The Supreme Court disagreed. In doing so, it discussed the reasons for requiring such a determination be made during the putative father's lifetime.

The Court began by noting its observation in an earlier decision that "the often difficult problem of proving the paternity of illegitimate children and the related danger of spurious claims against intestate estates ... 'might justify a more demanding standard for illegitimate children claiming under their fathers' estates than that required ... for legitimate children generally.'" 439 U.S. at 265, 99 S.Ct. at 523, quoting *Trimble v. Gordon* (1977), 430 U.S. 762, 770, 97 S.Ct. 1459, 1465, 52 L.Ed.2d 31. After indicating the statute's requirement was an evidentiary requirement, the Court proceeded to consider in detail "the peculiar problems of proof" involved in establishing paternity. 439 U.S. at 268–69, 99 S.Ct. at 524–25. The Court observed that childbirth in the absence of "a formal family unit" brings with it difficult problems of ascertaining and assigning paternal responsibility. Because of these problems, "spurious claims may be difficult to expose." *Id.* at 271, 99 S.Ct. at 526. The Court noted the New York statute was an attempt to deal with these problems rationally. It was the result of a lengthy study undertaken by a legislative commission. The commission determined "[a]ccuracy is enhanced by placing paternity disputes in a judicial forum during the lifetime of the father."

The commission concluded that adjudication of paternity during the father's lifetime increased "'the reliability of the factfinding process'" and permitted the designated father to defend himself against "'unjust accusations.'" 439 U.S. at 271, 99 S.Ct. at 526. The Court accepted these conclusions and found the statute's requirement of a paternity determination during

the father's lifetime was substantially related to these two important state interests, as well as to the accurate and efficient disposition of a decedent's estate. It was for this reason the Court found the requirement did not offend equal protection. The Court noted, however, its decision was not intended to restrict the states' freedom to employ other procedures for insuring the authenticity of asserted filial relationships.

The Supreme Court has again considered the problems of proof in paternity actions recently in *Pickett v. Brown* (1983), —— U.S. ——, 103 S.Ct. 2199, 76 L.Ed.2d 372 and in *Mills v. Habluetzel* (1982), 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770. In both cases the Supreme Court struck down brief limitations periods for filing paternity actions. The Court found there was not a substantial relationship between these periods and the state's interest in avoiding stale or fraudulent claims. Although the Court recognized the continuing existence of problems of proof in paternity actions, it observed "scientific advances in blood testing have alleviated" many of these problems. 103 S.Ct. at 2208; 456 U.S. at 104, n. 2, 102 S.Ct. at 1553, n. 2 (O'Connor, J. concurring). In *Mills* and in *Pickett* the Court held the state's interest in avoiding fraudulent claims must be balanced against the child's right to a "reasonable opportunity" for establishing paternity. 102 S.Ct. at 1554–55; 103 S.Ct. at 2204–05.

Indiana courts have also addressed this issue recently. *In Matter of M.D.H.* (1982), Ind.App., 437 N.E.2d 119 (transfer denied) we were confronted with a constitutional challenge to IC 31–4–1–26, a two year statute of limitations on paternity actions in effect from 1941 to 1979. In an opinion that followed *Mills v. Habluetzel* (1982), 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770, and anticipated *Pickett v. Brown* (1983), —— U.S. ——, 103 S.Ct. 2199, 76 L.Ed.2d 372, we held the two year limitations period unconstitutional as denying illegitimates the right to equal treatment under the law. In the course of that holding we observed that "we fail to comprehend how traditional problems of proof in paternity cases

differ in any significant respect from problems of proof in other civil actions arising during minority or why the problems of proof in cases involving only illegitimate children should be singled out for special treatment." 437 N.E.2d at 128. We found the state's interest in avoiding stale or fraudulent claims was outweighed by the state's interest in ensuring that illegitimates do not become wards of the state. 437 N.E.2d at 129; *see also R.L.G. v. T.L.E.* (1983), Ind.App., 454 N.E.2d 1268.

In *S.M.V. v. Littlepage* (1982), Ind.App., 443 N.E.2d 103, we had occasion to consider the relationship between IC 29–1–2–7(b) and IC 31–6–6.1–6, the current statute of limitations on paternity actions. In this regard we commented:

"Those statutes create Indiana policy and define the rights of illegitimate children in relation to their putative fathers. Each permits the enforcement of the rights of the child against the putative father's estate .... In addition to creating a right, those statutes create higher evidentiary requirements for recovery than those imposed on legitimate children enforcing the right to support. These requirements reflect a legislative policy that recognizes the difficulty of proving paternity and attempts to prevent spurious claims against the estate of the deceased."

443 N.E.2d at 109.

Judge Ratliff took issue with these observations in a concurring opinion. After reviewing *Habluetzel* and *Matter of M.D.H.* and the current state of the art in blood testing, Judge Ratliff concluded "the argument of difficulty of proof may well fall in the face of modern scientific knowledge." 443 N.E.2d at 110. Judge Ratliff commented upon two subsections of IC 31–6–6.1–6: IC 31–6–6.1–6(b) allows a child to file a paternity action at any time prior to his twentieth birthday, while IC 31–6–6.1–6(d) allows an action to be filed up to five months after the putative father's death. From these provisions Judge Ratliff concluded "the argument concerning stale

claims and spurious claims against a deceased father unable to deny paternity lose their force when these statutes are considered." 443 N.E.2d at 111. For other views on this issue *see Bernacki v. Superior Construction Co.* (1979), 270 Ind. 667, 388 N.E.2d 536; *Goins v. Lott* (1982), Ind. App., 435 N.E.2d 1002.

We have reviewed the case law in this area in some detail in an effort to discern the reasons for requiring a paternity determination during the putative father's lifetime as a condition precedent to intestate inheritance under IC 29–1–2–7(b). It appears the requirement is an evidentiary one intended to promote accuracy and fairness by insuring the determination takes place in an adversarial context. We now consider whether that requirement was satisfied in the present case. We began this discussion by noting the issue before us could arise in either of two situations, one being when a paternity action was commenced but not completed during the putative father's lifetime and the other being when such an action was not commenced during the putative father's lifetime. We are confronted with the former alternative. We base our decision upon that fact. Nothing in our decision today is to be construed as applying to a situation in which no effort was made to commence a paternity action until after the reputed father's death.

We hold the lower court did not err in awarding the infant A.B. an IC 29–1–4–1 allowance. We base our holding upon two considerations: One is the sequence of events in the present case. Another consideration is our review of the relatively sparse body of law addressing this issue.

We have reviewed the case law in this area in some detail in an effort to explore both the reasons for requiring paternity determinations during the lifetime of the putative father and the limitations imposed upon the states concerning the rights of illegitimate children. Needless to say, it is our obligation to construe the acts of the legislature to operate constitutionally where that may fairly be done under the

language of the statute. *Short v. Texaco, Inc.* (1980), Ind., 406 N.E.2d 625. In so doing, our courts will typically look through form to the substance of the provision in question. *Cerajewski v. McVey* (1947), 225 Ind. 67, 72 N.E.2d 650, 171 A.L.R. 723.

It appears the requirement of a paternity determination during a putative father's lifetime is an evidentiary one intended to promote accuracy and fairness by insuring the claim is presented in an adversarial context.

In the case before us a formal judicial proceeding was commenced during the putative father's lifetime. In addition, the putative father, by an executed written agreement submitted to the court in that proceeding, acknowledged that he was the father of the child. Under these circumstances we have no hesitation in concluding the provisions of IC 29–1–2–7(b) were sufficiently complied with. It follows that the court did not err. *Compare Handley v. Schweiker* (11th Cir.1983), 697 F.2d 999.

Affirmed.

STATON, P.J., concurs in result.

HOFFMAN, J., dissents and files separate opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent.

The provisions of IND.CODE § 29–1–2–7(b) have not been sufficiently complied with. This statute provides in part:

"(b) For the purpose of inheritance to, through and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his father, *if but only if, (1) the paternity of such child has been established by law, during the father's lifetime;* or (2) if the putative father marries the mother of the child and acknowledges the child to be his own." (Emphasis added.)

The majority concludes that the statutory requirements have been satisfied, and it implies that a more restrictive construction

of the statute would render it unconstitutional.

A statute is presumed to be constitutional and is entitled to every reasonable presumption supporting its validity. *Bunker v. National Gypsum Co.*, (1982) Ind., 441 N.E.2d 8; *Johnson v. St. Vincent Hospital, Inc.*, (1980) Ind., 404 N.E.2d 585. The presumption of this statute's constitutionality is not challenged by those now contesting its validity, and this issue is therefore not before this Court.

Assuming this issue was properly raised, the United States Supreme Court has upheld the constitutionality of a similar statute, requiring that legitimacy be declared by court order during the lifetime of the father. *Lalli v. Lalli*, (1978) 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503. The *Lalli* Court specifically held that:

"[F]ew statutory classifications are entirely free from the criticism that they sometimes produce inequitable results. Our inquiry under the Equal Protection Clause does not focus on the abstract 'fairness' of a state law, but on whether the statute's relation to the state interests it is intended to promote is so tenuous that it lacks the rationality contemplated by the Fourteenth Amendment. The Illinois statute in *Trimble* was constitutionally unacceptable because it effected a total statutory disinheritance of children born out of wedlock who were not legitimated by the subsequent marriage of their parents. The reach of the statute was far in excess of its justifiable purposes. Section 4-1.2 does not share this defect. *Inheritance is barred only where there has been a failure to secure evidence of paternity during the father's lifetime in the manner prescribed by the State. This is not a requirement that inevitably disqualifies an unnecessarily large number of children born out of wedlock.*" (Emphasis added.) 439 U.S. at 273, 99 S.Ct. at 527, 58 L.Ed.2d at 514.

There is no reason to now conclude that IND.CODE § 29-1-2-7(b) would not be similarly construed.

The statutory language at issue requires that paternity be *established by law* during the lifetime of the father. This statute is in derogation of the common law, and must be strictly construed. *Reger v. Reger*, (1961) 242 Ind. 302, 177 N.E.2d 901. This Court has construed the contested provision as follows:

"[I]t was the intent of the legislature by the use of the phrase, 'establish by law', in Item 1 of the above-quoted subsection (b) to mean that the paternity of such child must be first determined in a judicial proceeding brought for that purpose in a court of law having jurisdiction to determine such issue, during the lifetime of the putative father, in order for an illegitimate child to inherit from such father. Acknowledgement alone no matter how positive or often is not sufficient under our present law." *Thacker et al. v. Butler, Admr., et al.*, (1962) 134 Ind. App. 376, at 382–383, 184 N.E.2d 894, at 897. *See also Burnett v. Camden*, (1970) 253 Ind. 354, 254 N.E.2d 199, *app. dismissed, cert. den.* 399 U.S. 901, 90 S.Ct. 2202, 26 L.Ed.2d 556.

The mere admission of paternity through the signing and submission of a tentative order does not establish paternity as a matter of law under the analysis in *Thacker*. Furthermore, the important state interest in safeguarding the accurate and orderly disposition of decedents' estates could easily be frustrated by allowing proof of paternity through anything short of a judicial declaration or court order during the lifetime of the father.

The majority also seems to suggest that it is unfair to construe IND.CODE § 29-1-2-7(b) more restrictively than the paternity provisions contained in the juvenile code, IND.CODE §§ 31-6-6.1-1 to 31-6-6.1-19. I disagree. As stated in the majority's footnote 2:

"... IC 29-1-2-7 has been described as a statute of succession, rather than a statute of legitimation. A. , B. , v. C. , D. , (1971), 150 Ind.App. 535, 277 N.E.2d 599, 604. Statutes of legitimation permit a full declaration of legitima-

cy for all purposes, while statutes of succession simply allow a child to inherit as if legitimate although remaining 'illegitimate in social status.' 277 N.E.2d at 604. From 1831 until 1954 there was an Indiana statute of legitimation. However, the 1953 revision of the probate code eliminated the legitimation statute and replaced it with what is now denominated as IC 29–1–2–7. *See also* Acts 1953, c. 112, Section 207, Section 2501. The juvenile code also contains a section on paternity. IC 31–6–6.1–1 to 31–6–6.1–19. It provides for a determination of paternity as the necessary precursor to orders concerning support, visitation and custody. IC 31–6–6.1–10(a)."

The paternity provisions contained in the probate and juvenile codes clearly serve different purposes and should not be construed with reference to one another. This Court has specifically held that:

"We do not view the Probate Code and the paternity statute as being in *pari materia.* While it is true they both deal with illegitimate children, and to that extent both deal with the same subject matter, the Probate Code, and § 6–207 in particular, deals with illegitimate children as heirs, while the paternity statute deals with them as minor wards of the state in need of the support of their natural fathers for their own well being and to prevent them from becoming dependent upon the community. *Schultz v. Celebrezze,* 267 F.Supp. 880, 881, 885 (N.D.Ind.1967); *Hahn et al. v. Moore,* 127 Ind.App. 149, 158, 169, 133 N.E.2d

900, 134 N.E.2d 705 (1956) (Transfer denied).

\* \* \* \* \* \*

*[S]tatutes which provide for suits against putative fathers to obtain support, care and maintenance have nothing to do with inheritance rights. The obvious corollary is that statutes relating to proof of heirship and inheritance rights have nothing to do with suits against putative fathers to obtain support for illegitimate children."* (Emphasis added.) *Solomon v. Fenton,* (1969) 144 Ind.App. 100, at 104–105, 244 N.E.2d 228, at 231.

The case at bar does not involve the question of whether a child is being deprived of support from his father, to which he is entitled under Title 31. Instead, it concerns the statutory devolution of $8,500 as a family allowance under IND.CODE § 29–1–4–1. It is not unfair to deny this award in light of the fact that minor children may seek support through a deceased father's social security entitlements by proving paternity within five months of the father's death.

Any alleged deficiencies in regard to this statute must be resolved by the Indiana Legislature.

The decision of the trial court should be reversed.