OPINION OF THE COURT
Rosalyn Richter, J.
*743 Motion sequence numbers 002 and 003 are consolidated for disposition.
In these motions for summary judgment, plaintiff Liliana Dominguez Alvidrez seeks judgment as a matter of law on her invasion of privacy causes of action under Civil Rights Law § 51 against defendants Roberto Coin, Inc. and Getty Images, Inc. for using her photograph in commercial advertisements, and defendants contend that they are entitled to dismissal of the complaint on the ground that plaintiff and her legal guardian executed a release for the use of the photograph.
Plaintiff is a professional fashion model who has appeared on the covers of leading fashion magazines. This dispute arises out of a photography shoot that plaintiff attended in 1996. In that year, Telegraph Colour Library, Ltd. (TCL), a United Kingdom-based stock photography company, commissioned a shoot in Barcelona, Spain, from September 23 through September 27, 1996. A Spanish modeling agency, Francina Modeling Agency, arranged for plaintiff, who was 16 years old at the time, to participate. At the shoot, a portrait shot of plaintiff was taken with her hand supporting her chin. Plaintiff alleges that she received no compensation for the shoot.
Plaintiff signed a release consenting to the use of the photographs from the shoot, as did other models that attended the shoot. Defendants allege that plaintiffs mother, Enriqueta Alvidrez, also signed the model release as “E. Alvidrez” on behalf of plaintiff, then a minor, and that the release was witnessed by the shoot’s art director, Matt Hind. Plaintiff’s mother had also signed the Francina contract in Spain on plaintiffs behalf as her “representante legal,” and was plaintiffs legal guardian during the relevant period.
In 2000, Getty Images, an imagery company that licenses still and moving images, bought the parent company of TCL, Visual Communications Group, Ltd., in addition to the photographs and releases from the shoot. At some point in 2003, Getty licensed one of plaintiffs photographs from the shoot to Roberto Coin, Inc. Coin is the United States affiliate of an Italian designer of fine jewelry. The portrait photograph was to be used as part of Coin’s holiday advertising campaign to market and sell its Cento[1] Collection of diamond jewelry. Coin selected the photograph because it allowed for a Cento Collection necklace to be digitally superimposed on plaintiffs hand.
*744 In November 2003, plaintiff discovered her photograph in Coin advertisements printed in Vogue, Harper’s Bazaar, and Vanity Fair, which had been published without her knowledge. Beneath the picture appeared the tag line “100% SPOILED.” The advertisement incorporating plaintiff’s photograph appeared in numerous magazines in November and December 2003.[2]
Plaintiff, through counsel, contacted Coin on November 4, 2003, and demanded that the company cease the unauthorized publication of plaintiffs photographs. Getty responded by letter dated November 7, 2003, claiming that plaintiff had signed a release in 1996. On November 10, 2003, plaintiff’s attorney informed defendants that plaintiff was a minor at the time of the photo shoot, and, in an affidavit dated November 25, 2003, plaintiff expressly disaffirmed the release.
Plaintiffs complaint alleges two causes of action against Coin and Getty for invasion of her privacy under Civil Rights Law §51, and seeks a permanent injunction preventing defendants from using her photographs, $500,000 in damages for mental strain and distress, and exemplary damages. A preliminary injunction was granted by this court on February 17, 2004.
Summary judgment shall be granted if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party. (CPLR 3212 [b].) In order to make a prima facie showing, the movant must tender evidentiary proof in admissible form. (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979].) On the other hand, to defeat a motion for summary judgment, the opposing party must show facts sufficient to require a trial of any issue of fact. The opponent must also tender proof in admissible form or present a reasonable excuse for failing to do so. (Zuckerman v City of New York, 49 NY2d 557, 562 [1980].) “[I]ssue-finding, rather than issue-determination, is the key to the procedure.” (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957], rearg denied 3 NY2d 941 [1957]; see also Brown v Achy, 9 AD3d 30, 33 [1st Dept 2004].)
New York does not recognize a common-law right to privacy. (Shields v Gross, 58 NY2d 338, 344 [1983], rearg denied 59 *745 NY2d 762 [1983].) Instead, protection against invasion of privacy is based on sections 50 and 51 of the Civil Rights Law. Section 50 makes it a misdemeanor to use a person’s name, portrait or picture for commercial purposes without having obtained the person’s written consent. Section 51 provides a related civil cause of action. To prove a violation of Civil Rights Law § 51, the plaintiff must establish that (i) the defendant used the plaintiffs name, portrait, picture or voice, (ii) for trade or advertising purposes, (iii) within the State of New York, and (iv) without written consent. (Molina v Phoenix Sound, 297 AD2d 595, 597 [1st Dept 2002].) If a violation is established, the statute allows the plaintiff to obtain injunctive relief, as well as damages for any injuries sustained by reason of a prohibited use. Civil Rights Law § 51 only requires written consent for the commercial use of one’s photograph; consideration is not required. (Cory v Nintendo of Am., 185 AD2d 70, 73 [1st Dept 1993].) In cases involving minors, a parent’s written consent on behalf of a minor is binding on the infant and, in such cases, the infant may not disaffirm the consent. (Shields, 58 NY2d at 345.)
Defendants’ motion for summary judgment is based on the model release purportedly executed in 1996 by plaintiff and her mother. In support of their motion, defendants annex a copy of the release to defense counsel’s moving affirmation. In addition, defendants submit an affidavit of Robert Henson, Getty’s content classification manager, in which he avers that the release was made and kept in accordance with Getty’s usual business practices.[3] Henson’s affidavit states that it is Getty’s business practice to retain copies of all model releases, and that photographers typically retain the original model release. Henson also maintains that the release was not altered in any way, other than adding Getty’s unique identifying numbers and filing code for the photographs, which were written on the top of the page. Although Henson states that the release was signed by plaintiffs mother and witnessed by Matt Hind, Henson does not explain the basis of his belief, and it appears that Henson has no personal knowledge of the relevant events. In particular, Henson does not even indicate whether he contacted Hind or obtained any confirmation from anyone who was present when the release was executed. Defendants argue that no one could have added plaintiffs mother’s signature at a later time, given *746 that plaintiffs signature appears to the right of her mother’s signature on the same line on the document. Defendants also offer several samples of plaintiff’s mother’s handwriting produced in discovery, and argue that the handwriting on the release is the same. However, neither party submitted an affidavit from a handwriting expert.
Here, plaintiff does not deny that she signed the original of the release attached to defense counsel’s moving affirmation. Furthermore, although Henson lacks personal knowledge of the execution of the release, his affidavit establishes that the release may be admissible as a business record (see CPLR 4518 [a]). The release, signed for plaintiff by an “E. Alvidrez,” which is the name of plaintiffs mother, states that the model (or legal guardian) irrevocably and unconditionally:
“(I) Permit[s] the photographer named above and/or his/her licensees, assigns and successors to use all or any of the images derived from the shoot (‘the photographs’) and any other reproduction or adaptation of them either complete or in part, alone or in conjunction with any words, images, sound or other material whatsoever for all uses (including, but not limited to, advertising, promotion and publicity) in all media and by all means (whether now known or subsequently invented, and including, but not limited to books, magazines, video, film, CD-ROM and other interactive multi-media formats) in all territories throughout the world without any restriction whatsoever.”
Therefore, defendants have made a prima facie showing of entitlement to summary judgment.
In opposition to defendants’ motion, plaintiff has submitted evidence in admissible form to create a triable issue of fact. Plaintiff has submitted an affidavit from her mother, Enriqueta Alvidrez, indicating that she did not, in fact, sign the release, and that she never consented to the publication or use of the photographs taken at the shoot. In addition, plaintiff submits an affidavit attesting that her mother did not accompany her on the trip to Spain, where the release was executed, and that plaintiff does not know who signed her mother’s name on the document. These affidavits raise a material issue of fact as to whether plaintiffs mother consented to the use of the photographs, thus precluding summary judgment. (Lane Crawford Jewelry Ctr. v Han, 222 AD2d 214 [1st Dept 1995] [genuine issue of material fact as to whether alleged guarantor signed *747 guaranty of payment contained in sublease at issue precluded summary judgment against her on guaranty].)
Defendants’ reliance upon Banco Popular N. Am. v Victory Taxi Mgt., Inc. (1 NY3d 381, 384 [2004]) is misplaced. In that case, the parties disputed the authenticity of the defendant’s signature on certain contracts. In opposing the plaintiffs motion for summary judgment, the defendant submitted an affidavit stating that her purported signature on the documents had been forged. However, no other factual assertions supporting the claim of forgery were made. The Court of Appeals granted the plaintiffs motion for summary judgment and held that “[something more than a bald assertion of forgery is required to create an issue of fact contesting the authenticity of a signature.” (Id.)
Here, plaintiff has submitted more than a “bald assertion” of forgery. In addition to plaintiffs mother’s affidavit stating that she did not sign the release, plaintiff submits an affidavit stating that her mother did not accompany her on the trip to Spain, where the release was executed. If plaintiffs mother was not in Spain, as plaintiff contends, it would have been impossible for her to have signed the release upon which defendants rely. Thus, unlike the defendant in Banco Popular, plaintiff has submitted factual assertions supporting the claim of forgery. Notably, defendants do not offer any evidence to dispute plaintiffs claim that her mother was not present at the photo shoot. Nor do defendants contend that the release was signed in any place other than Spain. In addition, defendants have not submitted an affidavit from Matt Hind, who defendants allege witnessed the release. Nor was an expert opinion offered by defendants to establish that the signature on the release matched the handwriting on the samples. Finally, since defendants have been unable to produce the original of the release, it is questionable whether plaintiff would have been able to conduct any meaningful analysis of the signature in dispute. For all these reasons, Banco Popular is distinguishable.[4]
Finally, defendants argue that summary judgment is appropriate because there was no prohibited use of plaintiffs image af *748 ter she disaffirmed her consent. Although the parties disagree over exactly when the disaffirmance occurred, it is clear that such disaffirmance took place, at the latest, by November 10, 2003, when plaintiff’s attorney informed defendants that plaintiff was a minor at the time of the photo shoot. Although defendants state that no use of the photo occurred after that date, plaintiff has submitted documentary evidence contradicting that assertion. In light of this factual dispute, summary judgment is inappropriate.
Accordingly, it is ordered that defendants’ motion for summary judgment is denied; and it is further ordered that plaintiffs motion for summary judgment is denied.

. “Cento” means 100 in Italian. The number reflects that the collection’s diamonds are cut in a unique way so that they have 100 facets.

. These magazines include Architectural Digest, Four Seasons, Harper’s Bazaar, House Beautiful, Town & Country, Vanity Fair, Vogue, Angeleno, Boston Magazine, Chicago Magazine, Chicago Social, LA Confidential, Philadelphia, Rhode Island, and San Francisco.

. The parties have not submitted any deposition transcripts and rely solely on affidavits and documents.

. In granting summary judgment, the Court in Banco Popular noted that the defendant asserting that her signature was forged did not “demonstrate[ ] that her prelitigation conduct was consistent with a denial of [the signatures’] genuineness.” (Banco Popular at 384.) Here, in contrast, plaintiffs prelitigation conduct is entirely consistent with her present claim that the signature is a forgery.