**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Dennis B. LEVINE, et al., Defendants.**

**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Robert M. WILKIS, et al., Defendants.**

**Nos. 86 Civ. 3726 (RO), 86 Civ. 5182 (RO).**

United States District Court, S.D. New York.

July 7, 1988.

S.E.C., Daniel L. Goelzer, Gen. Counsel, Paul Gonson, Sol., Jacob H. Stillman, Benjamin Greenspoon, Associate Gen. Counsel, Richard A. Kirby, Thomas C. Newkirk, Asst. Gen. Counsel, Denise M. O'Brien, Deputy to Associate Gen. Counsel (Randall W. Quinn, Joseph H. Harrington, of counsel), S.E.C., Washington, D.C., (Robert B. Blackburn, of counsel), New York City, for plaintiff.

Mudge Rose Guthrie Alexander & Ferdon, New York City (Audrey Strauss, of counsel), for Elsa F. Wilkis.

S.E.C., Washington, D.C. (Barry Goldsmith, of counsel), for plaintiff in re Wilkis securities litigation.

U.S. Department of Justice, Tax Div., Washington, D.C., William S. Rose, Jr., Asst. Atty. Gen., Tax Div., D. Patrick Mullarkey, Chief, Civil Trial Section Northern Region (Seth G. Heald, of counsel), for U.S. Dept. of Justice.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City (Judith C. Zerden, of counsel), for State of N.Y.

Wolf, Popper, Ross, Wolf & Jones, New York City (Stanley Nemser, of counsel), Berger & Montague, P.C., 1622 Locust Street Philadelphia, Pa. (David Berger, of counsel), for Class plaintiffs in Re Boesky securities litigation.

Cadwalader, Wickersham & Taft, New York City (George Reycraft, of counsel), for plaintiffs Arden Way.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Arthur L. Liman, Martin Flumenbaum, Brad S. Karp, Robert Ernst, of counsel), for defendant Dennis B. Levine.

Reavis & McGrath, New York City (Eddy W. Friedfeld, of counsel), for Court Appointed Receiver Sheldon I. Goldfarb.

Kramer, Levin, Nessen, Kamin & Frankel, New York City (Gary P. Naftalis, Marvin E. Frankel, Michael J. Dell, Phillip Bentley, of counsel), for defendant Robert M. Wilkis.

Debevoise & Plimpton, Washington, D.C. (Robert J. Geniesse, Thomas Carroll, of counsel), for Cambrian & General Securities P.L.C. and Farnsworth and Hastings, Ltd.

## MEMORANDUM AND ORDER

OWEN, District Judge:

Defendants Levine and Wilkis disgorged $12.8 million and $3.4 million, respectively, into receivership pursuant to the Consent and Undertakings and Final Judgments of Permanent Injunction that each signed in June of 1986 following negotiations with the SEC. The Consents and Final Judgments stated that each defendant was permanently restrained and enjoined from engaging in fraud or deceit in connection with

the purchase and sale of any security as well as from engaging in "fraudulent, deceptive, or manipulative acts or practices with regard to tender offers, *see* Wilkis Final Judgment at ¶¶ I, II; Levine Final Judgment at ¶¶ I, II. In addition, the disgorged assets, which represent illegal trading profits, were "to be available for satisfaction of claims against Defendants arising out of the purchase and sale of securities ... pursuant to a Court-approved plan to be proposed by the [SEC]." Wilkis Final Judgment at ¶ V; Levine Final Judgment at ¶ V.

The SEC's proposed plans of distribution are now before the Court, as are the motions by Levine and Wilkis and the United States to afford preferential treatment to defendants' tax liabilities upon distribution of receivership assets.

The federal tax claims assessed against Levine, although the subject of dispute,[1] amount to $12,205,191.25 including interest and penalties as of December 31, 1987. New York State has expressed its intent to assess Levine for state taxes some time in the near future. Wilkis's federal tax liability as of the same date including interest and penalties amounted to approximately $2.8 million and his state tax liability was $585,000. All of these tax liabilities remain unpaid to date; they represent a very large percentage of the total assets disgorged by Levine and virtually all of the assets disgorged by Wilkis.

The United States asserts that federal taxes enjoy priority status in the distribution of receivership assets because tax assessments give rise to liens on taxpayers' property which take precedence over most other claims. The United States relies on 31 U.S.C. § 3713(a)[2] or, in the alternative, on 26 U.S.C. §§ 6321 and 6322[3] to support this lien theory.

Understandably, while ironically, the defendants find themselves aligned with the IRS in advancing this theory. In addition to the statutory bases for imposing priority treatment, however, Levine and Wilkis also assert that the SEC agreed to afford tax claims priority status in oral representations to defendants' attorneys prior to and contemporaneously with the signing of the Consents and Final Judgments. The defendants also place great reliance on side letters to defendants' attorneys from the SEC dated June 5, 1986 (to Levine's attorney) and June 29, 1986 (to Wilkis's attorney), which defendants interpret as affording priority to tax claims. Accordingly, Levine and Wilkis attack the SEC's proposed distribution plans for their failure to accord this favorable treatment to tax claims.

Levine also urges that his criminal fine of $362,000.00 is to be paid out of receivership assets. In support of this position Levine cites the SEC's June 5 side letter, which allows payment of "any other claims, fines or penalties which may be asserted based upon the securities transactions alleged [by the SEC] ... or conducted by [Levine]."

The SEC, while rejecting the notion of priority for tax liens, has nevertheless espoused a compromise position regarding tax liabilities in its proposed distribution plans. Specifically, the Levine distribution plan, after deducting $880,000 in adminis-

---

1. Pursuant to an Endorsed Memorandum dated September 23, 1987, this Court will hear Levine's petition for redetermination of his federal tax liability at a future date.

2. 31 U.S.C. § 3713(a) provides, in relevant part:
   (a)(1) A claim of the United States Government shall be paid first when—
   (A) a person indebted to the Government is insolvent and—
       (i) the debtor without enough property to pay all debts makes a voluntary assignment of property[.]

3. 26 U.S.C. § 6321 provides:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

The lien described in § 6321 "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed ... is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.

trative expenses, allots 42% of the fund, or $4.87 million, in satisfaction of tax claims, with the remaining 58%, or $6.63 million, to be paid in satisfaction of investor claims.[4] Similarly, the SEC proposes the following distribution of the Wilkis fund: after deducting $600,000 in administrative expenses, 49%, or $1.38 million, would satisfy tax claims and 51%, or $1.42 million, would satisfy investor claims. The SEC asks that this Court, sitting in equity, approve the plans as representing a fair allotment of assets among the competing interests.

The SEC does, however, take issue with Levine's argument that the side letter would allow payment of his criminal fine out of receivership. Instead, the SEC characterizes the criminal fine as a claim which is punitive in nature and personal to Levine. Significantly, and in contrast to the tax claims, the SEC points out that the United States has made no assessment to date against receivership assets or, for that matter, against Levine himself in collecting this fine. In rejecting payment of the criminal fine out of receivership, the SEC places primary reliance on provisions in the Consent and Undertakings embodying Levine's agreement to give up any personal claims to the funds upon disgorgement.

■ Under 15 U.S.C. § 78aa, district courts have general equity powers to remedy violations of the securities laws and to fashion appropriate remedies. *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1103–04 (2d Cir.1972). Disgorgement of funds obtained by insider trading is an equitable remedy, and this Court has broad discretion in approving a proposed plan of distribution of such funds. *SEC v. Certain Unknown Purchasers,* 817 F.2d 1018, 1020 (2d Cir.1987) (*quoting Lemon v. Kurtzman,* 411 U.S. 192, 200, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973)), *cert. denied,* — U.S. ——, 108 S.Ct. 1013, 98 L.Ed.2d 979 (1988); *Manor Nursing Centers, Inc., supra,* 458 F.2d at 1103.

Since this Court is sitting in equity to review the distribution of the assets currently in receivership, I reject the defendants' claims that the SEC, in entering into side letter agreements with defendants, agreed to accord tax claims priority status to the obvious reduction of the fund available for defrauded investors. A mere cursory review of the parties' representations as to their respective interpretations of the side letters reveals that they did not by any menas attach the same or even a similar meaning to these letters. The SEC contends that it intended merely to delineate the group of eligible claims from the receivership funds, defining tax claims as being included under this rubric. Attorneys for Levine and Wilkis, on the other hand, argue strenuously that oral representations by the SEC, when viewed together with the side letters, provided assurance that tax claims were guaranteed to be satisfied on a priority basis. The letters themselves are arguably consistent with either view.

■ Given the parties' complete disagreement on the intent of the side letter agreements, I must and do treat these letters as void and of no effect here based on mutual mistake of the parties and do not consider them in construing the terms of Wilkis's or Levine's Consent and Undertakings or Final Judgments. Restatement (Second) of Contracts § 152 at 385 (1981) states that "where a mistake of both parties at the time a contract was made as to a *basic assumption* on which the contract was made has a *material effect* on the agreed exchange of performances, the contract is voidable" (emphasis added). There is no question that treatment of tax claims in the distribution of receivership assets was a hard-fought and much debated issue, and that the underlying assumptions regarding resolution of this issue have had (and continue to have) a material effect on post-agreement proceedings. It is also evident that affording priority to tax claims

---

**4.** The SEC includes as investors those who traded in the market contemporaneously with Levine and Wilkis while each was in possession of material nonpublic information from target companies. In addition, those who traded con-

temporaneously with Levine or Wilkis when either of them derived material nonpublic information from tender offer bidders are included as investors entitled to assert claims to the disgorged assets.

3

321

would leave little or nothing for satisfaction of investors' claims while at the same time conferring substantial benefits on defendants. Under the equity powers of this Court, therefore, the side letters are voided. *See Alden Auto Parts Warehouse, Inc. v. Dolphin Equipment Leasing Corp.*, 682 F.2d 330, 333 (2d Cir.1982) (stating general principle that contract entered into under mutual mistake of material fact is usually avoidable, and that rescission "is addressed to the equity powers of the court.").

■ Moreover, consent decrees such as the Consents and Final Judgments here

> are entered into by parties ... after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case.... [T]he resultant decree embodies as much of [the parties'] opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, *the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.*

*United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757–58, 29 L.Ed.2d 256 (1971) (emphasis added).

Further, I do not accept defendants' position that the SEC's purported—and denied—oral representations regarding tax claim priority made prior to or contemporaneously with the Consents or Final Judgments should be considered to modify the terms of the written agreements. It is fundamental that the parol evidence rule bars parties to a contract from introducing prior or contemporaneous oral representations as modifications of the terms of the written agreement. *Ohanian v. Avis Rent a Car System, Inc.*, 779 F.2d 101, 108 (2d Cir.1985). Consequently, the Consents and Final Judgments are to be interpreted and given effect without reference to either the side letters (as discussed *supra*) or any alleged oral representations by the SEC modifying their terms.

■ Going forward, since neither the Consent nor the Final Judgment signed by Levine addresses the issue of payment of his criminal fine out of receivership, I reject Levine's arguments in support of such payment. It is almost an affront to suggest that those defrauded by Levine's insider trading activities should have their recovery reduced by the amount of his fine. The fine is personal and punitive in nature and as such is not subject to payment out of Levine's illegal gains to the detriment of investors.

■ I reject the contention by the defendants and the United States that tax liens have attached to the assets in receivership so as to give them priority status. While the government and the defendants are undeniably correct in asserting that a valid tax lien does enjoy priority over most other claims, priority is determined at the time the tax indebtedness first accrues, *United States v. 58th Street Plaza Theatre, Inc.*, 287 F.Supp. 475, 496 (S.D.N.Y. 1968) (citing 31 U.S.C. § 191, the predecessor of 31 U.S.C. § 3713), and the lien cannot attach in the first instance unless the attached property belongs to the taxpayer. *See* 26 U.S.C. § 6321 (unpaid taxes give rise to lien "upon all property ... *belonging* to [taxpayer]") (emphasis added). Thus, the threshold question to be resolved before determining whether a tax lien has attached is whether a taxpayer "had 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law" to resolve the question of ownership. *Aquilino v. United States*, 363 U.S. 509, 512, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960).

■ Levine and Wilkis obtained the assets they disgorged through illegal trading activities. These assets are therefore analogous to funds which have been embezzled or misappropriated, as they were obtained by wrongful means and cannot properly be considered property of the defendants. Title to the funds was "acquired ... under such circumstances that [one] is under a duty to surrender it[.]" *United States v. Fontana*, 528 F.Supp. 137, 146 (S.D.N.Y.1981), *quoting* 5 A. Scott, *Law of*

*Trusts* § 462.4 (3d ed.1967). Consequently, Levine and Wilkis held but bare legal title to these funds from the time they were obtained, with equitable title arising in investors who were injured as a result of their illegal activities. *See SEC v. Paige*, 1985 U.S. Tax Cas. (CCH) ¶ 9588 (D.D.C. July 30, 1985) [available on WESTLAW, 1985 WL 2335] (under general rule of common law the victim, and not the embezzler, retains title to funds), *aff'd*, 810 F.2d 307 (D.C.Cir.1987) (unpublished disposition); *Fontana, supra*, 528 F.Supp. at 143 (court interpreted New York law to provide that employer retained title in funds misappropriated by employee through breach of fiduciary duty). Thus, neither defendant ever had such property interests in the funds to which tax liens could have attached. Instead, holding bare legal title, they serve as trustees for the benefit of defrauded investors. *See Fontana, supra*, 528 F.Supp. at 143–46; *Paige, supra*, 1985 U.S. Tax Cas. at 89,506.[5]

Equity as well dictates a constructive trust here. Disgorgement of illegally obtained funds is "a method of forcing a defendant to give up the amount by which he was unjustly enriched.... The paramount purpose of enforcing the prohibition against insider trading by ordering disgorgement is to make sure that wrongdoers will not profit from their wrongdoing." *SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir.1987). Recognizing the existence of a constructive trust is entirely appropriate as a

> device used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. When a court of equity finds that a defendant is the holder of a property interest which he retains by reason of unjust, unconscionable, or unlawful means, it takes such interest from the defendant and vests it in the wronged party.

G. Bogert, *Law of Trusts and Trustees* § 471 at 3–4 (rev. 2d ed. 1978) (footnotes omitted).

■ Thus, two goals are achieved: the first is restitution to injured investors and the second is preventing Levine and Wilkis from enjoying personal gain in the form of payment of their tax liabilities or Levine's criminal fine.[6] Consequently, it is legally and equitably appropriate to declare and recognize that a constructive trust arose at the time of Levine's and Wilkis's wrongdoing, 5 A. Scott, *Law of Trusts* § 462.4 (3d ed. 1967), *quoted in Fontana, supra*, 528 F.Supp. at 146, and that the disgorged profits are therefore held for the satisfaction of investors' claims. *See also SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1307–08 (2d Cir.) (where corporate insiders profited through use of corporate information prior to public disclosure, insiders ordered to make restitution by placing profits in escrow "subject to disposition in such manner as the court might direct upon application by the SEC or other interested person, or on the court's own motion), *cert. denied*, 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971).

Defendants contend that no constructive trust may be found here because the SEC has failed to demonstrate the existence of all four factors for imposing a constructive

---

**5.** As a result, any argument regarding Levine's property interest in funds on which taxes were assessed prior to disgorgement must fail; since the funds never truly "belonged" to either defendant, the mere fact that an assessment occurred prior to as opposed to after disgorgement (as did Levine's first tax assessment) is of no consequence.

**6.** It is well established that even illegally obtained funds fall under the rubric of "taxable income" and are therefore taxable to the wrongdoer. *James v. United States*, 366 U.S. 213, 81

S.Ct. 1052, 6 L.Ed.2d 246 (1961). Since the victims of the wrongdoing are entitled to restitution, "it is inconsequential that [a wrongdoer] may lack title to the sums be appropriates.... Questions of federal income taxation are not determined by such 'attenuated subtleties.' " *Id.* at 216, 81 S.Ct. at 1054. Therefore, the United States may continue to seek satisfaction of the defendants' tax liabilities out of their assets other than the funds disgorged into receivership, which are held in constructive trust for defrauded investors.

trust under New York law, namely a confidential or fiduciary relationship, a promise, a transfer in reliance on the promise, and unjust enrichment. *United States v. Rivieccio*, 661 F.Supp. 281, 292 (E.D.N.Y.1987). However, it has also been held that, "although the factors are useful in many cases constructive trust doctrine is not rigidly limited," *Simonds v. Simonds*, 45 N.Y.2d 233, 241, 408 N.Y.S.2d 359, 363, 380 N.E.2d 189, 194 (1978), and a constructive trust may be found even in the absence of these prerequisites when, as here, equity and common sense require. *See Rivieccio, supra*, 661 F.Supp. at 292 (four elements are not "talismanic" and constructive trust can exist in absence of confidential or fiduciary relationship due to equitable nature of constructive trust remedy).[7]

Given the foregoing, the receivership assets are held in constructive trust for the benefit of defrauded investors free of any IRS lien. I therefore decline to approve the SEC's proposed plans of distribution of the assets held in receivership. The SEC is directed to submit revised plans of distribution not inconsistent herewith within sixty (60) days.

Submit order on notice.

---

**7.** A group of plaintiffs in another action who invested in Ivan Boesky limited partnerships, the *Arden Way* claimants, are currently suing Levine for damages caused by his conspiratorial conduct with Boesky. This group asserts that it, too, should be included in the present plan and should be entitled to make claims to Levine's disgorged assets based on damages suffered. However, the general-type damages allegedly incurred by the *Arden Way* plaintiffs are much less directly linked to Levine's activities than the harm he caused contemporaneous investors, *see Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156 (2d Cir.1980). Therefore, the *Arden Way* claimants do not enjoy a similar priority to Levine's disgorged assets.

Should there be funds remaining after the investors' claims have been satisfied, in that event the Court will deal with the issue of relative priorities to such remainder as between *Arden Way*, IRS or any other claimants.