**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**DREXEL BURNHAM LAMBERT, INC., et al., Defendants.**

No. 88 Civ. 6209 (MP).

United States District Court, S.D. New York.

Feb. 25, 1997.

**504**

Securities and Exchange Commission (Leo F. Orenstein, of counsel), Washington, D.C., for Plaintiff.

Sullivan & Cromwell (Richard H. Klapper, of counsel), New York City, for Fischbach Corporation.

Berger & Montague (David Berger, of counsel), Philadelphia, PA, for Mark L. Glosser, Trustee for Pennsylvania Engineering Corp.

Kirkland & Ellis (Jean Reed Haynes, of counsel), New York City, for Defendant Victor Posner.

Metzger, Hollis, Gordon & Mortimer (Stuart Gordon, of counsel), Washington, D.C., for Defendant Steven Posner.

Proskauer Rose Goetz & Mendelsohn (Richard H. Rowe, of counsel), Washington, D.C., for George Heyman, Trustee.

### OPINION

MILTON POLLACK, Senior District Judge:

Plaintiff Securities and Exchange Commission has moved this Court for an order directing the Court Registry Investment System ("CRIS") to pay to the general fund of the United States Treasury all monies held by CRIS that were paid as disgorgement herein (the "Fund") by defendants Victor Posner and Steven Posner, plus all accrued interest thereon. The approximate amount of the Fund is $4,382,772.26.

The motion requests that the Fund be paid to the Treasury as the most appropriate and equitable disposition of the Fund under the facts and circumstances presented by this case. In opposition to the motion, the Fischbach Corporation and the bankruptcy trustee of Pennsylvania Engineering Corporation ("PEC") each seek payment of the Fund. For the reasons stated below, the SEC's motion is granted, and the Fund shall be paid to the Treasury.

### Background

The SEC brought this action against recidivist securities law violators Victor and Steven Posner for violation of the securities laws for failing to disclose a fraudulent arrangement with Michael Milken and Ivan Boesky whereby they acquired control of Fischbach Corporation. Following a bench trial of the SEC's claims, the Court found that, at the prompting of the Posners and Michael Milken, and with the understanding that he would be indemnified for any loss he sustained, Boesky took a 10 percent position in Fischbach to void a standstill agreement between the Posners and Fischbach and thereby enabled the Posners to acquire control of Fischbach. The Court held that, by failing to disclose the arrangement with Milken and Boesky, the Posners had violated sections 10(b) and 13(d) of the Securities Exchange Act of 1934 and the Rules thereunder, and had aided and abetted Boesky's violations of various margin and recordkeeping requirements of the Exchange Act. In addition to injunctive relief and ancillary remedies intended to preclude the Posners from exercising control over any public company, the Court ordered Victor and Steven Posner to disgorge $2,255,000 and $262,000 respectively, representing the compensation they were paid by Fischbach during the time the Posners controlled the company, plus interest thereon. *SEC v. Drexel Burnham Lambert,*

*Inc.*, 837 F.Supp. 587, 611–12 (S.D.N.Y.1993), *aff'd*, 16 F.3d 520 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 724, 130 L.Ed.2d 629 (1995).

As both this Court and the Second Circuit observed in their opinions in this case, "once the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an appropriate remedy." 837 F.Supp. at 614, 16 F.3d at 521 (both quoting *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1103 (2d Cir. 1972)). In its findings and conclusions, the Court found that the Posners "have repeatedly abused their positions in public companies, engaged in self-dealing, enriched themselves at the expense of public shareholders, and generally conducted themselves in ways that are antithesis of what one expects of a corporate fiduciary." 837 F.Supp. at 606. In fashioning an appropriate remedy, the Court took into account not only the violations relating to the fraud by which the Posners acquired control of Fischbach, but also numerous other documented instances of their having engaged in misconduct while acting as officers and directors of public companies.

Confronted with such chronic abuse of corporate position, and observing that the injunctions imposed against them in prior SEC enforcement actions had been "notably ineffectual in preventing them from engaging in securities law violations," *id.* at 613, the Court undertook to fashion a remedy that would ensure the Posners' future compliance in corporate transactions. Thus, in addition to enjoining them yet again from engaging in further violations, the Court also barred them from serving as officers or directors of any reporting company. *Id.* To ensure that they did not, through stock ownership, exercise *de facto* control of any such companies, the Court further ordered them to place in a voting trust any voting securities they owned in any reporting company they controlled. *Id.*

The Court also ordered the Posners to pay disgorgement, observing that "[d]isgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws." *Id.* at 611 (quoting *SEC v. First City Financial Corp.*, 890 F.2d 1215, 1230 (D.C.Cir.1989)). In view of the purposes served by disgorgement, the Court noted, *inter alia*, that 1) "the amount of disgorgement ordered 'need only be a reasonable approximation of profits causally connected to the violation,'" *id.* at 612 (quoting *First City*, 890 F.2d at 1231); 2) owing to the difficulty of distinguishing legal from illegal profits, "it is proper to assume that all profits gained while defendants were in violation of the law constituted ill-gotten gains," *id.* (quoting *SEC v. Bilzerian*, 814 F.Supp. 116, 121 (D.D.C.1993)); and 3) it then becomes the defendant's burden to rebut the presumption and show that such profits were not causally related to the violation. *Id.*

In accordance with these principles, the Court ordered the Posners to disgorge the money they were paid as compensation by Fischbach, reasoning that "[h]ad it not been for their fraudulent arrangement with Milken and Boesky, the Posners would not have been able to acquire control of Fischbach and thus would not have been able to place themselves in high-paid positions at the company." *Id.* The disgorgement order comprehended all compensation paid to the Posners by Fischbach during the years they controlled the company. At trial, the Posners offered no evidence to show that they had performed real services for Fischbach, or to rebut in any other way the SEC's showing that they had been unjustly enriched by their violations.[1] Looking to the financial results reported by Fischbach during the years the Posners controlled it, the Court stated that "[a]ny contention they might make that their services were of real value to the company is belied by the results reported in Fischbach's public filings." *Id.*

The disgorgement thus represented money misappropriated from Fischbach by the Posners. The Posners used their Exchange Act violations to gain control of Fischbach, and place themselves in highly paid positions at

---

1. Similarly, although the Court expressly invited them to do so, the Posners declined to testify at trial regarding their unfitness to serve as corporate officers or directors. 837 F.Supp. at 606.

the company. The salary paid to the Posners therefore represented illegal profits from the Exchange Act violations, and the Court ordered these profits disgorged under its broad equitable power "to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws."

The Second Circuit rejected the Posners' challenges to the remedies ordered and affirmed the judgment in all respects. *SEC v. Posner*, 16 F.3d 520 (2d Cir.1994). Victor Posner promptly paid the disgorgement ordered following the entry of judgment in early 1994. Steven Posner failed to satisfy the judgment against him within the time allowed under the judgment, but eventually paid in full (including all accrued interest) in June 1996. In accordance with the judgment, the Posners' disgorgement has been deposited in CRIS awaiting the Court's approval of a distribution plan to be submitted by the SEC.

The SEC has made its motion pursuant to the following paragraphs of the Final Judgment as to defendants Victor Posner and Steven Posner entered herein on December 29, 1993:

> XI. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, no later than three days following the entry of this judgment, Victor Posner shall disgorge the sum of (1) $3,601,761.00, representing disgorgement and prejudgment interest up to and including December 13, 1993; (2) $668.00 per day from December 13, 1993, up to and including the date of entry of judgment herein; and (3) $353.00 per day from the date of entry of judgment herein up to and including the date that the full amount of disgorgement is paid as provided herein, to be distributed pursuant to a plan of distribution to be prepared by the SEC and approved by the Court.
>
> \*    \*    \*    \*    \*    \*
>
> III(f) The SEC shall as soon as practicable submit a plan of distribution for the Court's consideration. The plan may provide for the appointment of a

Fund Administrator to effectuate the terms of the plan.

The SEC argues that although it is the policy of the SEC whenever possible to recommend a distribution plan by which a defendant's unlawful gains are paid out to defrauded investors, the facts and circumstances of this case make it impracticable to identify injured parties with quantifiable claims. It therefore argues that the facts and circumstances make it appropriate that the disgorgement money plus all accrued interest be paid to the Treasury.

In opposition to the SEC, the bankruptcy trustee for PEC, Mark L. Glosser, argues that PEC is entitled to the disgorged funds because Victor Posner "caused PEC to enter into securities transactions involving Fischbach stock in which it would inevitably, and did in fact, sustain loss." PEC was at one time controlled by the Posners and was a vehicle through which the Posners acquired control of Fischbach. PEC filed for bankruptcy on February 4, 1992, and its creditors are now represented by Glosser, who, as trustee for PEC, settled with Posner, recovering $15 million as damages for those claims. The settlement agreement expressly recited that the $15 million shall "constitute payment in full for the resolution of any and all matters and/or claims ... that are or could be relied or asserted by Glosser against Posner herein." The SEC contends that Glosser would be realizing a double recovery if he were allotted any part of the disgorgement.

Fischbach, which was acquired by American International Group ("AIG") in 1990, asserts that it is entitled to the Posners' disgorgement because Fischbach, the company, was directly injured by paying compensation to the Posners. Fischbach claims it is entitled to the entire amount disgorged because it was the sole source of those funds as well as the party directly injured by payment of those funds to the Posners. The SEC contends that Fischbach's claims to restitution were extinguished when Fischbach shareholders sold their shares to AIG, and that any disbursement to AIG under the guise of payment to its nominal subsidiary Fischbach

would constitute a windfall because the company's new management at one time considered suing Victor Posner, but decided against it, and because distribution to Fischbach would provide no benefit to those who were directly injured by whatever derelictions the Posners may have been guilty of.

### Discussion

■ In cases of securities law violations, the District Court "has broad equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits." *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1474 (2d Cir.1996). As part of this broad equitable power, the District Court also "has broad discretion in approving a proposed plan of distribution of such funds." *SEC v. Levine*, 689 F.Supp. 317, 320 (S.D.N.Y.1988), *rev'd on other grounds*, 881 F.2d 1165 (2d Cir.1989); *see also* Louis Loss & Joel Seligman, Securities Regulation 3745 (3d ed. 1991) ("[T]he courts exercise considerable discretion both in fixing the quantum of disgorgement and in deciding who gets it.").

■ The disgorgement remedy is not intended to compensate investors; rather, it is intended to deprive the violator of unjust enrichment, thereby furthering the deterrence objectives of the securities laws. *First Jersey*, 101 F.3d at 1474; *see also SEC v. Commonwealth Chemical Securities, Inc.*, 574 F.2d 90, 102 (2d Cir.1978) (Friendly, J.) ("[T]he primary purpose of disgorgement is not to compensate investors. Unlike damages, it is a method of forcing a defendant to give up the amount by which he was unjustly enriched."). This purpose distinguishes disgorgement from the similar remedy of restitution. While some cases have equated the two remedies, *see, e.g., Tull v. United States*, 481 U.S. 412, 424, 107 S.Ct. 1831, 1838–39, 95 L.Ed.2d 365 (1987), they are distinct in that restitution aims to make the damaged persons whole, while disgorgement aims to deprive the wrongdoer of ill-gotten gains. *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir.1993); *see also SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir.1987). Thus, an order requiring a securities laws violator to disgorge illegal profits might require the disgorgement of

"an amount more or less than that required to make the victims whole." *Id.; see also First Jersey*, 101 F.3d at 1475 (holding that disgorgement amount should be calculated by measuring illegal profits, not the amount needed to reimburse defrauded investors).

■ Once the illegal profits have been disgorged, the District Court must make an equitable distribution of the funds. In many cases, once the primary purpose of disgorgement has been served by depriving the wrongdoer of illegal profits, the equitable result is to return the money to the victims of the violation. Such a distribution is not required by statute, however, and may not be appropriate where, for example, "numerous victims suffered relatively small amounts ...; where the victims cannot be identified ...; [or] where there are no victims entitled to damages." *SEC v. Lorin*, 869 F.Supp. 1117, 1129 (S.D.N.Y.1994), *aff'd* 76 F.3d 458 (2d Cir.1996). Where distribution to identifiable injured parties is not feasible or appropriate, the money disgorged by the defendant is paid to the Treasury. *See, e.g., SEC v. Dimensional Entertainment Corp.*, 1996 WL 107290 (S.D.N.Y.1996); *SEC v. Marcus Schloss & Co., Inc.*, 714 F.Supp. 100 (S.D.N.Y.1989).

It bears emphasis that the securities law violations proved at trial consisted of the Posners' failure to disclose their arrangement with Milken and Boesky, While those violations presumably caused distortions in the market for Fischback stock from the time Boesky started accumulating it on Posners' behalf, quantifying that distortion would be conjectural, as would be identifying "victims" of the nondisclosure.

■ Thus the task presently before the Court is to make an equitable distribution of the Fund, based on the facts and circumstances of this case. The Fund represents money looted by the Posners from Fischbach, and consequently Fischbach argues that the money should be paid to it. Fischbach, however, has no equitable claim to the Fund. The damage done to Fischbach by the Posners occurred before AIG acquired Fischbach. Awarding the Fund to Fischbach would thus be a windfall to AIG, and would

**508**

do nothing to compensate those persons directly damaged by the Posners' looting of Fischbach. Fischbach's equitable position is further weakened by the fact that after the purchase by AIG, Fischbach's new management considered suing Victor Posner, but decided not to do so. The fact that the SEC had already brought this action does not excuse Fischbach's failure to act. The SEC does not seek to vindicate discrete private rights, and an SEC action does not preclude private parties from bringing their own actions. Having let "the government pay[ ] the bill for the lawsuit," *Marcus Schloss,* 714 F.Supp. at 102, Fischbach is now seeking a windfall. An ancient maxim of equity holds that "equity aids the vigilant, not those who slumber on their rights." *See* 11A Charles A. Wright & Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 2946 at 113 (2d ed.1995). Thus, even if Fischbach had a colorable legal claim against the Posners, it has no equitable claim to the Fund[2].

■ The persons damaged by the Posners' looting of Fischbach were the minority shareholders who held Fischbach stock during the years the Posners controlled the company. It would be difficult and costly to identify and locate these shareholders, and it would be difficult to devise a coherent formula for distributing money among them. It would therefore be impracticable to pay the Fund to the minority shareholders. It bears emphasis that this case differs from the typical securities fraud case in that the money disgorged represented money looted from a corporation and it would be difficult if not impossible to construct a distribution that would restore the status quo. *SEC v. Courtois,* [1984–85 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 92,000, 1985 WL 489 (S.D.N.Y. April 11, 1985) (disgorgement paid to Treasury in view of difficulty of identifying particular claimants and likelihood that distribution would result in only nominal distribution to claimants).

■ The trustee for PEC also has no equitable claim to the Fund. The trustee's submission fails to show how PEC was damaged by the Posners' looting of Fischbach. The trustee also reached a settlement with the Posners covering all claims that could be asserted by the trustee against the Posners, and the trustee would therefore realize a double recovery if he received any part of the disgorgement. Based on the findings made in the SEC enforcement action, the Court granted summary judgment on liability in favor of Mark L. Glosser, the bankruptcy trustee for Pennsylvannia Engineering Corporation in his action against Victor Posner. *In re Ivan F. Boesky Securities Litigation,* 848 F.Supp. 1119 (S.D.N.Y.1994). Because, as already mentioned, he has through settlement with Posner, already recovered all damages that could be attributed to the violations proved in the SEC action, he is not entitled to any portion of the disgorgement money.

Fischbach and PEC have no equitable claims to the Fund, and finding that it would be impracticable to pay the Fund to those parties damaged by the Posners' looting of Fischbach, the Fund should be paid to the Treasury. This result is particularly fitting in this case in light of the Posners' long and inglorious history of preying on public companies and the many times the government has sought to compel their compliance with the law. Paying the money to the Treasury will help defray the cost of those efforts.

### Conclusion

Under all the particular facts and circumstances of this case, the Court, in the exercise of an informed discretion, agrees with the SEC that the Fund should be paid to the Treasury. The motion of the SEC is granted and payment of the Fund is directed to be made to the United States Treasury, as set forth in the accompanying order hereon.

SO ORDERED.

2. So far as the appropriate disposition of disgorgement is concerned, this case presents a very different situation from one courts and the SEC face where the measure of disgorgement relates specifically to gains or losses on specific and identifiable trading or investments, as in insider and fraudulent offering cases.