884

EDWARDS et al. v. RECTOR, CHURCH WARDENS AND VESTRYMEN OF TRINITY CHURCH IN CITY OF NEW YORK et al.

No. 427.

Circuit Court of Appeals, Second Circuit.

June 3, 1935.

Ransom H. Gillett, of Albany, N. Y., for appellants.

Sprague, Seymour & Sprague, of New York City (Chase Mellen, of New York City, of counsel), for appellees.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The judgment below was entered on a dismissal of the appellants' second amended complaint. Section 277, Civil Practice Act, N. Y.; rule 107, Rules of Civil Practice, N. Y. Two questions are presented on this appeal: (1) Was the dismissal of the original complaint on the merits res adjudicata as to the questions on this appeal; and (2) is the suit barred by the statute of limitations?

The view we take of the case makes it necessary to consider the second question only.

The appellants lay claim to valuable property in downtown New York City, borough of Manhattan, and their claim of title is based upon allegations of descendance from one who had title and who had never alienated it—Thomas Hall—their common ancestor, who had received a grant of the property in question from the Director General of the Dutch West India Company in 1642. The appellee denies title in appellants and affirmatively pleads the statute of limitations. It is alleged that the property was conveyed to appellees by virtue of a grant from Queen Anne in 1705, and appellees have had undisputed possession thereof since at least 1777. Appellants argue that the statute of limitations is not an available defense on the claim that any occupation of the property which appellees may have had is and was illegal, because unauthorized by appellees' charter, and that in consequence such occupation as appellees had in no way affected the title of appellants.

The pleadings and affidavits sufficiently show that the appellants and their ancestors have allowed a greater period than that named in the statute of limitations to go by without making any effort whatever to recover possession of the land which they say was granted to their ancestor Hall.

Appellees' charter is said to limit its right to acquire property to an amount not exceeding that which would have a rental or income value of £500, and, it is claimed, because the rental value exceeded that sum, it could not retain title. Appellants rely on In re McGraw's Estate, 111 N. Y. 66, 19 N. E. 233, 2 L. R. A. 387, where certain bequests were made by the testatrix to Cornell University. By statute (Laws N. Y. 1865, c. 585, § 5), the university was not permitted to hold property in excess of a value of $3,000,000. At the time of the bequest, the university already had property up to the limit. The court held that this bequest was void because the corporation had no power to take it. The university had

there argued that the heirs had no right to question its power to hold property; that holding property in excess of the amount permitted by statute was a question solely for the cognizance of the state, and until the state took action, the corporation had a right to continue to hold the property bequeathed it. This argument was rejected by the court upon the ground that any devise to a corporation which the state forbids it to accept is void, and the land descends to the heirs. The court reviewed the many cases which held that a restriction imposed by charter on the amount of property a corporation might take could not be taken advantage of collaterally but only in a direct proceeding by the state. See Jones v. Habersham, 107 U. S. 174, 2 S. Ct. 336, 27 L. Ed. 401; Smith v. Sheelley, 12 Wall. 358, 20 L. Ed. 430; Bogardus v. Trinity Church, 4 Sandf. Ch. 633. In the Bogardus Case, supra, it was held that the fact that a corporation holds property in excess of the amount permitted by statute was no concern of individuals. This case and the McGraw Case are in no way inconsistent. In the McGraw Case, the corporation already held, at the time of the devise, property in an amount equal to that which it was permitted to hold by statute. But in the Bogardus Case, and now in the instant case, the corporation had by no means reached the permitted limit of its holdings. As was pointed out in the Bogardus Case, when the grant in question was made, even with the properties included in the grant, appellees did not hold nearly as much as it was permitted to do under the terms of the charter. This distinguishes the cases. In the Bogardus Case, this appellee prevailed on a defense of adverse possession. It was argued that the limitations contained in appellee's charter prevented it from ousting any one with title, and from its acquiring title by adverse possession. But the argument did not prevail.

In Humbert v. Trinity Church, 24 Wend. 587, the appellee raised the defense of the statute of limitations, and the plaintiff there claimed that under the law this appellee could have no title. In deciding against the other plaintiff's contention, the court said: "Admit that the law will cast no title on the corporation, the answer, in the words of the statute is equally fatal: 'You have been out of possession for more than twenty years, and are thus disqualified to maintain an action to recover your land against me or any other.' "

The forty-fifth paragraph of the second amended complaint pleads that the appellee took possession of the land, which it has held since about 1777, "without legal right and in contravention of the limitation placed upon it" by the express provisions of the charter and therefore had no foundation for title in law or fact. The grant from which the appellee derives its title to the Church Farm or Queen's Farm, as it was then known, came from the sovereignty, the Crown of England, and we can hardly assume that it willfully and knowingly violated its own restrictions in making it. The grant recites that the lands covered by it are now let at the yearly rent of 30 pounds." There is a presumption that the grant was in all respects legal, and it is interesting to note that in August, 1697, seven years before the date of Queen Anne's charter, the royal governor gave a lease of the Queen's Farm to Trinity Church for a period of seven years at an annual rental of 60 bushels of wheat. In January, 1704, the corporation holding under the lease let the farm to an individual for seven years at an annual rent of 30 pounds. The burden of proving the rental value of the property at the time (1705) of the royal grant was on the appellants and it has not been pleaded or sustained.

Moreover, the only property then held by the appellee was that included in its charter of 1697, granted by William III, which was property now a churchyard and upon which the church now stands. It had no rental value. Charter of Trinity Church, Act of 1704.

The act of 1704 was not a charter; it was an act granting sundry privileges to the corporation already established. The appellants have erroneously called it a charter.

The other argument advanced by the appellants is that the amount of rent and income having since exceeded the amount limited by the charter, it cannot now plead the statute of limitations. But this contention was effectively disposed of in the Bogardus Case, supra. The court said: "First, the church acquired the title to the King's Farm, by the letters patent in 1705, when the whole farm was not worth as much as one city lot of twenty-five by a hundred feet, in almost any part of it, would sell for at this moment. Nor is it probable that the most visionary speculator of that era, expected to live to see the day when the King's

Farm would yield a net income of £500 a year. * * * It is undeniable, therefore, that the grant by Queen Anne, was clearly within one tenth part of the limitation imposed by the act of 1704. Now it scarcely needs an observation to show, that the accidental increase in the income of a corporation derived from its vested estates, to a point beyond what its charter prescribes, cannot have the effect to divest its title in such estates, or in any portion of them."

This long period of possession and occupation was intended, within the statute of repose, to be sufficient to establish adverse possession. It would be grossly unreasonable to deprive the appellee of property it acquired within the limits of its charter simply because of a fortuitous rise in the value of the property, and the appellants have not shown that the grant of Queen Anne gave appellee property in excess of the amount it was permitted to acquire under its charter.

The pleaded alleged cause of action is barred by the statute of limitations.

Judgment affirmed.