EDWARD HAYWARD, an Infant, by ARTHUR HAYWARD, His Guardian ad Litem, Plaintiff, *v.* LAWRENCE EDWARDS, WILLIAM RANDELL, DAVID M. MINTON, ALBERT S. WASSERMAN, DAVID M. MINTON, JR., ROBERT H. MINTON and HERMAN N. SCHEER, Doing Business under the Firm Name and Style of DAVID M. MINTON & Co.; WILLIAM B. ANDERSON and J. HORACE BLOCK, Doing Business under the Firm Name and Style of ANDERSON, BLOCK & COMPANY, Defendants.

Supreme Court, Trial Term, Queens County, March 14, 1938.

*Carsten H. Ludder*, for the plaintiff.

*Tibbetts, Lewis, Lazo & Rand,* for the defendants William B. Anderson and J. Horace Block.

CUFF, J.   Conversion action tried in Queens county, Part IV. It was stipulated that only the question of liability should be submitted to the jury; that the amount of damages, if any, would be determined by the court.   The stipulation was unnecessary.   The only question presented is to decide as of what day the value of the stock certificate should be appraised.   That is for the court. (*Wright* v. *Bank of the Metropolis,* 110 N. Y. 237, 249.)

The facts, briefly, are: Defendant Edwards, on August 17, 1934, appropriated a stock certificate intrusted to him by the infant plaintiff's grandmother (Edwards' mother) to be delivered to the infant plaintiff, a ten-year-old boy.   The certificate, which was for fifty shares of Interborough Rapid Transit stock, was registered in the boy's name.   Edwards forged his signature.   Defendant Minturn & Co. certified the forgery and defendant Anderson, Block & Co. bought the certificate from the thief.   Edwards defaulted and the action was severed as to him.   The jury found for plaintiff against both defendants.

The wrongful taking was discovered in January, 1935, by someone in the boy's household.   This action was started February 3, 1936. It was tried January 26, 1938.   The stock fluctuated from twenty-three and five-eighths in September, 1935, to three and one-half in December, 1937.   Setting the time for fixing the value of the converted certificates becomes important.

When the property converted is a certificate of stock, the value of which varies daily on the exchanges, a special rule of damages has been adopted.   Tempering the law is that ever present mandate that the injured one shall keep down the damages.   (*Norske Ameriekalinje* v. *Sun P. & P. Assn.,* 226 N. Y. 1, 7.)   Spurred by that injunction decisions that have fixed values for the purpose of assessing damages in stock cases have varied from the highest price of the securities between discovery of the conversion and the day of the trial (*Romaine* v. *Van Allen,* 26 N. Y. 309; *Burt* v. *Dutcher,* 34 id. 493) to the highest price attained between discovery and a reasonable time thereafter.   (*Baker* v. *Drake,* 53 N. Y. 211; *Burhorn* v. *Lockwood,* 71 App. Div. 301, and others.)

The cases which have had the court's attention involving converted stock certificates had their inception in business transactions where, generally, mistakes had been made.   (*Burhorn* v. *Lockwood,* 71 App. Div. 301; *Griggs* v. *Day,* 158 N. Y. 1; *Minor* v. *Beveridge,*

141 id. 399; *Langford* v. *Fessenden,* 208 App. Div. 315.) Resting its judgment upon such considerations as mistake, honest error, and to thwart the plan of those who seek profit and not indemnity, the court established the "reasonable time" rule of damages. PECKHAM, J., in *Wright* v. *Bank of the Metropolis* (110 N. Y. 237), remarked, after reviewing numerous decisions: "In all this discussion as to the rule of damages, we have assumed that the defendant acted in good faith, in an honest mistake" (p. 249).

The "reasonable time" has been greatly narrowed over the years. Fifteen days was held reasonable. (*Minor* v. *Beveridge,* 141 N. Y. 399.) Because within thirty days after the discovery the stock could have been bought on the open market for a price the same as or lower than it was selling for at the time of the discovery, only nominal damages were allowed. (*Colt* v. *Owens,* 90 N. Y. 368.)

Defendant herein claims that the court should be guided in fixing that "reasonable time" by the cases cited and he suggests thirty days from discovery. These holdings fail of application here because factors dominate this situation which are the direct opposites of the inducements which prompted the court to set up originally the "reasonable time" rule.

No one could read the cases without concluding that the "reasonable time" rule as established by them presumed that the plaintiff had a knowledge of stock trading. A theory is constructed in those decisions to the effect that plaintiff would have done that which would have brought him the greatest return on his investment, if his possession of the securities had not been interfered with. For instance, in fixing that "reasonable time" the courts have said that the victim was entitled to time after discovery in which to decide upon what course to follow in adjusting his affairs. He might want to consult the market quotations; to advise with experts in trading; to raise the cash required for another purchase of stock or to repurchase the same securities that were converted. (*Burhorn* v. *Lockwood, supra.*) That analogy will not be questioned were the one whose property was taken had the capacity to decide things of that nature. But a ten-year-old boy knows nothing of stock trading, consulting, repurchasing or fund raising.

Defendant assumes in his argument that the knowledge of the boy's parents should be regarded as his knowledge. This case is a complete answer to that fallacy. The child's uncle — not a stranger — practiced the deceit. A child should not be forced to depend upon the judgment of relatives or any one else for the sole purpose of rendering lighter those just deserts which a wrongdoer merits as a consequence of his acts. That unjust principle of

charging knowledge to an infant by imputation, an undesirable creature of the common law, survived in our jurisprudence in negligence cases all too long and we were well rid of it when the Legislature deported it. (Dom. Rel. Law, § 73.) To resurrect it would be a step backward.

None of the considerations that formed the basis for the original "reasonable time" rule, nor for the short periods grafted upon it which have been held to be reasonable, are present here. There was no mistake, no good faith; just ordinary embezzlement by Edwards. Defendant Minturn & Co., who guaranteed the signature, was either in collusion with Edwards or hopelessly negligent. If defendant Anderson, Block & Co., the buyer, took without notice (and there is no suggestion that it had notice), it has rights against Minturn that amply protect it. If it had knowledge of the nefarious transactions it is *particeps criminis.*

The court takes these parties as it finds them. The victim is a boy, ignorant — because of his age — of the stock trading art. The law appoints no mentor to act for him and thus impute knowledge to him.

Applying the "reasonable time" rule, how long following discovery will be said to be reasonable in this situation? No authority on that question has been called to my attention. The inquiry ends just where it starts, because the boy has not yet discovered his loss, for the purpose of charging him with taking proper action to keep down the damages.

The "reasonable time" for fixing damages in this child's case began when the conversion was discovered, January, 1935. The boy has determined himself the date of expiration of the "reasonable time" by bringing the suit and moving it for trial. The period should not extend beyond the day of trial. Whether we take the commencement of the suit or the day of trial makes no difference, because the logical day — September, 1935 — when the stock was at its highest following discovery of the conversion preceded both of those dates.

There are convincing reasons why the "reasonable time" in the case of a ten-year-old child should be longer than in other cases. Stealing from a child of tender years could not be consummated without the guilty party realizing that the penalties that should flow from detection of such an act ought to be proportionately greater than those that would be imposed for perpetrating the same wrong upon an adult. Such offender should be held to a greater degree of responsibility because of the ease with which the theft could be accomplished from a child, and the likelihood that a long lapse of time would pass before discovery.

A wrongdoer cannot complain if the rule of damages applied to his case simply accords with the nature of his act. In this case there was a fiduciary relationship between Edwards and this child.

In contracts an infant may void the deal. An infant of tender years cannot be guilty of contributory negligence. Statutes of Limitations are extended in his favor. The law demands complete protection for an infant who has an action to bring or enters into a contract or is injured because of another's negligence. These are special considerations granted to infants. They are the law by reason of a long-established public policy, which was found to be necessary.

That wholesome protecting arm of the law should not be withdrawn from an infant when fixing a rule of damages to be applied against those who have taken the infant's property. Harsh treatment has resulted at times because of the successful plea of infancy (*Joseph* v. *Schatzkin*, 259 N. Y. 241), but without exception or any desire to curtail it, the salutary doctrine of infancy immunity has been enforced.

The foregoing observations are valuable in deciding what attitude the court should assume when confronted by another situation involving an infant. Who contracts with an infant, the law reminds, acts at his peril. Who steals from an infant or aids the thief to dispose of the property should be no less favored.

In determining the damages I fix September, 1935, as a date within a reasonable time after the discovery of the conversion for establishing the value of the stock certificate. At that time the prices of the shares reached twenty-three and five-eighths. For fifty shares that is $1,156.25. As the infant should have had that money in September, 1935, but did not because of the conversion, he is entitled to interest from that date. (*Matter of Goodchild*, 100 Misc. 738, 756.) The judgment will be in favor of the plaintiff against both defendants for $1,156.25, with interest from February 28, 1935.